**Carl David BRANTLEY, Petitioner,**

v.

**STATE INDUSTRIAL COMMISSION, Oxford Hotel and Hartford Accident and Indemnity Company, a corporation, Respondents.**

**No. 37539.**

Supreme Court of Oklahoma.

June 25, 1957.

Rehearing Denied Sept. 17, 1957.

O. B. Martin, Oklahoma City, for petitioner.

Fenton & Fenton, Oklahoma City, for respondents.

WILLIAMS, Justice.

On the 28th day of February, 1956, Carl David Brantley, hereinafter called claimant, filed his first notice of injury and claim for compensation stating that on April 2, 1955, while employed by the Oxford Hotel he sustained an accidental injury arising out of and in the course of the employment when he was struck on the head in a hotel room. The State Industrial Commission denying an order found in part as follows:

"That the accidental injury sustained by claimant on April 2, 1955, did not arise out of and in the course of his employment with respondent, Oxford Hotel.

"It is therefore ordered, That claimant's claim for compensation be and the same is hereby denied."

The order was affirmed by the Commission en banc and this proceeding is brought by the claimant against the employer and its insurance carrier, Hartford Accident and Indemnity Company, a corporation, to review the order denying the award.

Because it reveals better than any analysis of the evidence we copy a part of the statement made by claimant given on April 15, 1955:

"My name is Carl D. Brantley, age 49, married, living with my wife and small daughter at 318 S. 4th, Enid, Okla. I am employed as a bell boy at the Oxford Hotel in Enid where I have been employed for the past 23 years. I was injured in an accident at the hotel about 7:15 a. m. on the morning of April 2, 1955. My working hours at that time were from 7 p.m. to 7 a.m. and I was working as night captain.

"Right at 7 a. m. I was loading the pop box in the lobby and was about ready to go off duty when one of the other bell boys (I don't remember which one) told me that a certain room wanted to see the captain. I have been unable to remember which room it was,

but I am pretty sure it was either 231 or 331.

"I went up to the room to see what they wanted, I knocked and started into the room. The door opened to my right. I saw a man sitting in the room and he said something. Suddenly I was hit on the right side of my head with something hard—apparently someone was standing behind the door. I turned and ran out of the room slamming the door behind me. I ran down the hall and noticed that the hall window leading out to the fire escape was open. I crawled out the window and went down the escape to the place where it stops about 20 feet above the alley. I let myself down as far as I could by hanging on to the bottom rung of the escape, then I let go and dropped (first page of exhibit signed at this junction: /s/ Carl Brantley /s/ Mrs. Carl Brantley) to the pavement of the alley. I guess I was somewhat dazed from the blow on the head. After I fell I was unconscious for a time. Someone found me and I was taken to St. Mary's Hosp. in an ambulance where I was attended by Dr. A. B. White.

"X-rays revealed that there were 4 or 5 fractures to the bones in my right lower leg. I came home from the hospital last Saturday. The blow on the right side of my head and face cut a laceration across my right cheek bone and cut the corner of my right eye and it was necessary for stitches to be taken in it.

"The injuries to my face and leg were the only injuries I received in the accident.

"I don't know what was behind the attack but my idea of it is that they intended to knock me out and take my money off me. The Enid police investigated the incident but I understand they didn't turn up anything because I was unable to identify the exact room. I did not remember ever before seeing the man I saw in the room just before I was hit."

The only difference in the statement and the testimony of claimant is that in his testimony he definitely fixed room 331 as the room he entered. Respondents emphasize what claimant said as to why he was being robbed and the claimant argues that the statement was made soon after the incident and should not be used against him. We disregard the statement insofar as it discusses the conclusion as to why he was being robbed because we are of the opinion that his conclusion about what was happening does not constitute evidence in the absence of showing of some physical action by the assailant to support such conclusions. The State Industrial Commission must decide from all the facts and circumstances whether the assault by a third party was personal to the claimant or an assault committed in connection with the business of the employer. There is evidence from which the State Industrial Commission was authorized to find that room 231 was occupied by two residents of northwestern Oklahoma in no way connected with any crime or assault; that room 331 was occupied by two marines and that investigation by the police disclosed these marines had regular travel orders and that the investigation further disclosed that the occupants of this room were in no way connected with any crime or assault. No one was ever apprehended or held or charged with the assault.

█ In Indian Territory Illuminating Oil Co. v. Lewis, 165 Okl. 26, 24 P.2d 647, claimant as was his custom, had returned at night to the premises of the employer and was engaged in making up the records when he was shot after resisting a robbery directed against him personally. In Stanolind Pipe Line Co. v. Davis, 173 Okl. 190, 47 P.2d 163, 164, claimant was assaulted by former employees by reason of a personal grudge. In both of these cases it was held the accidental injury did not arise out of and in the course of the employment. In Stanolind Pipe Line Co. v. Davis, supra, we said:

"An injury 'arising out of' the employment, within the meaning of the Workmen's Compensation Act, must have resulted from a risk reasonably incident to the employment. There must be apparent to the rational mind, upon consideration of all the circumstances, a causal connection between (1) the conditions under which the work is required to be performed and (2) the resulting injury."

In Cordell Milling Co. v. State Industrial Commission, 173 Okl. 195, 47 P.2d 168, an employee of a flour mill sent by the employer to deliver supplies was assaulted by a robber. This court likewise held that the accidental injury did not arise out of and in the course of the employment.

■ Although there are cases to the contrary which perhaps announce the majority rule insofar as the number of cases is concerned, see 112 A.L.R. 1262 et seq. and annotations prior thereto, our court has adopted the rule that an employee who sustains an accidental injury due to assault by a third person does not sustain an accidental injury arising out of and in the course of the employment if the assault is personal to the employee. Each case cited by claimant may be distinguished by a finding or evidence that the person who assaulted the particular claimant did so by reason of something connected with the business of the employer. See Dillon v. Dillman, 133 Okl. 273, 272 P. 373, where claimant was attempting to protect the property of employer. Yellow Cab Co. v. Wills, 199 Okl. 272, 185 P.2d 689; Royster v. McCoy, Okl., 293 P.2d 587, and other cases cited by claimant can likewise be distinguished.

In Standish Pipe Line Co. v. Johnson, 197 Okl. 238, 169 P.2d 1018, we said:

"The question of whether an injury arose out of and in the course of employment is one of fact to be determined by the Industrial Commission under the circumstances of each particular case, and, where there is any testimony reasonably tending to support its finding, it will not be disturbed on an application to vacate the award."

■ There is competent evidence reasonably tending to support the finding of the State Industrial Commission that the accidental injury did not arise out of and in the course of the employment.

Order sustained.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.